UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
WILLIAN ESCALANTE, et al.,                                  :
                                                            :
                                Plaintiffs,                 :
                                                            :           21-CV-795 (VSB)
                    -v-                                      :
                                                            :           **ORDER**
                                                            :
FUNSAN K. CORP., et al.,                                     :
                                                            :
                                Defendants.                 :
                                                            :
------------------------------------------------------------X

<u>VERNON S. BRODERICK, United States District Judge</u>:

On August 2, 2022, I issued an Order denying without prejudice the parties' proposed

settlement agreement in light of Plaintiffs' failure to provide (1) an estimation of each plaintiff's

calculated damages and the amount each plaintiff would receive under the settlement agreement and

(2) an explanation of the $5,000 reduction in Plaintiffs' calculation of Plaintiff Ruben Bruno's

damages, which the parties state Plaintiff Bruno already received from Defendants in connection

with an earlier agreement.  (Doc. 43 (the "August Order").)[1]  After rejecting the settlement

agreement, I instructed the parties that they may proceed by either (1) filing a revised proposed

settlement agreement within twenty-one (21) days that cures the deficiencies and a new letter that

explains why the revised settlement is fair and reasonable; or (2) filing a joint letter that indicates

the parties' intention to abandon settlement.  (*Id.*)

On August 23, 2022, the parties submitted a new letter that provides a breakdown of

Plaintiffs' individual damages and settlement allocation and an explanation of the reduction of

Plaintiff Bruno's damages amount.  (Doc. 44 ("Settlement Ltr.").)  For the reasons stated herein and

---

[1] I assume the parties' familiarity with the background of this action, which is set forth in my August 2, 2022 Order.
(Doc. 43.)  I adopt the findings from the August Order, and those findings are incorporated in this Order.

in my August Order, I find that the settlement of the parties is fair and reasonable and therefore approve it.

### I.      <u>Applicable Law</u>

When assessing the fairness of a settlement amount in a FLSA action, courts in this Circuit consider a "maximum possible recovery," which includes all possible bases entitling a FLSA plaintiff to monetary relief, such as "liquidated damages." *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 316, 322 (S.D.N.Y. 2021); *Zorn-Hill v. A2B Taxi LLC*, No. 19-CV-1058 (KMK), 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) ("The percentages provided by the Parties undercount the [p]laintiffs' alleged damages and best-case return" because "they do not include liquidated damages"); *Vargas v. Pier 59 Studios L.P.*, No. 18-CV-10357 (VSB), 2020 WL 8678094, at *1 (S.D.N.Y. Sept. 10, 2020) ("Plaintiff's calculation of potential recovery does not appear to include the possibility of liquidated damages, which FLSA authorizes at a rate of 100 percent of unpaid wages").  Because of this, parties seeking approval of a FLSA settlement must supply a calculation addressing all possible sources of a plaintiff's potential damages.  *See, e.g.*, *Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2967 (VSB), 2022 WL 576300, at *2 n.1 (S.D.N.Y. Feb. 25, 2022) (calculating damages based on "unpaid minimum wage, unpaid overtime premiums, unpaid spread of hours premiums, liquidated damages, wage notice and wage statement damages, and interest as of the date of the mediation statement." (internal quotation marks omitted)); *Kanchanawong v. Amobee, Inc.*, No. 21-CV-4409 (VSB), 2021 WL 6500139, at *2 (S.D.N.Y. Dec. 27, 2021) (assessing a settlement breaking down the sources of possible damages as stemming from "around $51,000 in unpaid wages, $51,000 in liquidated damages, and $10,000 for violations of the Wage Theft Prevention Act."); *Galindo v. E. Cnty. Louth Inc.*, No. 16 CIV. 9149 (KPF), 2017 WL 5195237, at *4 (S.D.N.Y. Nov. 9, 2017) ("The settlement amount that Plaintiff is to receive, $5,292, would cover all back wages, liquidated damages,

and statutory penalties.").

If the settlement agreement applies to multiple plaintiffs, the plaintiffs must provide an

estimation of each plaintiff's calculated damages and the amount each plaintiff would receive under

the settlement agreement. *Leonardo v. Reza Fast Food*, *Inc.,* No. 20-CV-8879 (VSB), 2022 WL

2440975, at *3 (S.D.N.Y. July 5, 2022) (denying settlement agreement, in part, because "the parties

do not provide an estimation of each [p]laintiff's damages" or the amount of the total damages each

plaintiff would receive); *Calderon v. CJS Wholesalers*, No. 17 CV. 6154 (HBP), 2019 WL 289969,

at *1 (S.D.N.Y. Jan. 23, 2019) (referencing the Court's earlier denial of the settlement agreement

because it failed to specify each plaintiff's claimed damages and share of the settlement amount).

## II.   Discussion

### A.   *Plaintiffs' Individual Damages*

The settlement agreement provides for the distribution to Plaintiffs of $30,000, inclusive of

attorneys' fees and expenses.  (Doc. 42-1 ("Settlement Agmt.") § 4.)  Plaintiffs assert that they are

entitled to $76,151.39 in unpaid wages, $15,000.00 in wage notice and wage statement damages,

$76,151.39 in liquidated damages, and $30,056.23 in interest as of May 6, 2021.  (Settlement Ltr.

1–2.)  In their revised letter, Plaintiffs provide a breakdown of the amount of the total settlement

amount each Plaintiff will receive under the settlement agreement, which is as follows:

|  | Unpaid Wages | Liquidated Damages | Wage Notification | Interest | Total Damages | % Total Damages | Settlement Allocation |
|---|---|---|---|---|---|---|---|
| Plaintiff Escalante | $31,735.48 | $31,735.48 | $10,000.00 | $11,099.63 | $84,570.60 | 43% | $7,817.92 |
| Plaintiff Bruno | $44,415.91 | $44,415.91 | $5,000.00 | $18,956.60 | $112,788.41 | 57% | $10,363.28 |

(*Id*. Ex. 1.)

In calculating each Plaintiff's damages, their counsel "calculated the percentage of the total

damages represented by each Plaintiff's individual damages and multiplied that percentage by the

net settlement amount payable directly to the Plaintiffs, to yield the settlement allocation to which each Plaintiff is entitled pursuant to Plaintiffs' damages calculations." (Settlement Ltr. 1.) Plaintiffs' individual worksheets for each Plaintiff demonstrate the maximum possible recovery to which each Plaintiff could be entitled, including unpaid wages, liquidated damages, wage notification, and interest. (*Id*. Ex. 1.) These worksheets support the fairness of the proposed settlement amount with respect to each Plaintiff. *See Leonardo*, 2022 WL 2440975, at *2 ("When assessing the fairness of a settlement amount in a FLSA action, courts in this circuit consider a maximum possible recovery, which includes all possible bases entitling a FLSA plaintiff to monetary relief, such as liquidated damages." (internal quotation marks omitted)); *Galindo*, 2017 WL 5195237, at *4 (approving the settlement amount because it "would cover all back wages, liquidated damages, and statutory penalties."). Plaintiffs' counsel then used the total damages to calculate the percentage of the total damages each Plaintiff should receive. (*See* Settlement Ltr. Ex. 1.) This demonstrates that "the amount to be paid to Plaintiffs under [the] revised settlement amount is fair and reasonable when compared to Plaintiffs' maximum possible recovery." *Leonardo*, 2022 WL 2440975, at *2 (quoting *Miranda v. Grace Farms, Inc.*, No. 16-CV-1369 (VSB), 2022 WL 1771720, at *4 (S.D.N.Y. May 31, 2022)); *see also Montalvo v. Arkar Inc.*, No. 17-CV-6693 (AJN), 2018 WL 2186415, at *1 (S.D.N.Y. May 10, 2018) (approving percentage of settlement amount for each plaintiff that was based on the "relative length of each Plaintiff's time of employment with Defendants, their respective overtime rates, and the estimated number of unpaid overtime hours that they worked"). Courts in this Circuit have approved similar percentage allocations to individual FLSA plaintiffs. *See, e.g.*, *Carrera v. DT Hosp. Grp.*, No. 19CV4235RAKHP, 2021 WL 6298656, at *14 (S.D.N.Y. Nov. 1, 2021), *report and recommendation adopted*, No. 19CV4235RAKHP, 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021) (approving settlement allocation of 49 percent for one plaintiff and 51 percent for the other); *Zhang*

*v. Zhang*, No. 16 CIV. 4013 (LGS), 2018 WL 11326690, at *2 (S.D.N.Y. Mar. 30, 2018)

(approving allocation of 56 percent to one plaintiff and 44 percent to the other plaintiff); *Aly v. Dr.*

*Pepper Snapple Grp., Inc.*, No. 18 CV 4230 (FB)(LB), 2019 WL 3388947, at *3 (E.D.N.Y. June 13,

2019), *report and recommendation adopted*, No. 18-CV-4230 (FB) (LB), 2019 WL 3388925

(E.D.N.Y. July 26, 2019) (approving individual plaintiffs' awards of 41 percent, 31 percent, and 28

percent of the net settlement amount).  For these reasons, I approve the settlement amount.

      **B.**    ***Plaintiff Bruno's Previous Payment***

      Plaintiffs represent in their revised letter that Plaintiff Bruno's award is discounted by

$5,000 due to Defendants' earlier $5,000 payment to Plaintiff Bruno.  (Settlement Ltr. 2–3.)

Plaintiff Bruno previously entered into a separate agreement with Defendants that provided Plaintiff

Bruno would release his wage and hour claims against Defendants in exchange for a $5,000

payment (the "Previous Agreement").  (*Id.*)  Plaintiffs, however, do not consider the release

provisions of the Previous Agreement binding because, among other reasons, the Previous

Agreement included "one-sided terms that favor Defendants," Defendants failed "to provide a

translation of the [Previous] Agreement into Spanish," which is Plaintiff Bruno's native language,

and Defendants prohibited Plaintiff Bruno from consulting an attorney in connection with the

Previous Agreement.  (*Id.*)  Defendants disagree with Plaintiffs' analysis and aver that Plaintiff

Bruno entered into the Previous Agreement voluntarily and absent coercion.  (*Id.*)  However, in

order to avoid the risks of litigation and to advance settlement of this action, the parties agreed to

offset Plaintiff Bruno's damages calculations to account for Defendants' earlier $5,000 payment to

Plaintiff Bruno in connection with the Previous Agreement.  (*Id.*)  The parties indicate in their

initial letter requesting approval of the settlement agreement that they believe the settlement amount

is a fair recovery based on the risks associated with establishing Defendants' liability.  (Doc. 41 at

3–4.)  The parties also state that, given the substantial time and expense resolution of the disputed

issues would take, they prefer to settle for the agreed-upon amount, which includes a deduction of $5,000 for Plaintiff Bruno.[2]  (*Id*. at 4.)  I find that, as discussed above, because Plaintiff Bruno's damages reflect his maximum possible recovery to which he could be entitled, including unpaid wages, liquidated damages, wage notification, and interest—minus $5,000 for a payment he confirms he has already received from Defendants—the settlement amount is fair and reasonable.

### C.     *Remaining Provisions*

In my August Order, I noted that I reviewed the remainder of the terms in the Agreement and found that they appeared to be fair and reasonable.  (August Order 4–6.)  In particular, I found that the release provision is not overbroad because it applies only to the claims at issue in this action that occurred before execution of the agreement, the non-disparagement clause includes a carve-out for truthful statements, and the agreement does not contain any confidentiality provision that would restrict Plaintiffs' ability to discuss the settlement or any bar on Plaintiffs' employment.  (*Id*.)  I also assessed the fairness of the attorneys' fees and found that they were fair and reasonable.  (*Id*. at 5–6.)

### III.    Conclusion

For the reasons stated above, I find that the parties' proposed settlement agreement is fair and reasonable.  The settlement agreement of the parties is hereby APPROVED.

The Clerk of Court is directed to terminate any open motions and close this case.

SO ORDERED.

Dated:     November 8, 2022
           New York, New York

_____
Vernon S. Broderick
United States District Judge

---

[2] In any event, whether the Previous Agreement released Plaintiff Bruno's claims is irrelevant at this juncture because the parties have reached a settlement in this matter.